The court is taking up 425013 MPOWER Energy NJ LLC Appellant v. Illinois Commerce Commission at all. Counsel for the appellant, if you'll please state your appearance for the record. John I. Hawson from Craig and Craig on behalf of the appellant. May it please the court. Thank you. Counsel for the appellee, if you'll state your name for the record. Jonathan Studer, Assistant Attorney General on behalf of the Commerce Commission. Josh Orweiler on behalf of Commonwealth. Christopher Skeed, Assoc. AQI, Quarles Trading Firm on behalf of the appellate. Thank you. Counsel for the appellate, I do have the information with regards to your breakdown as far as argument today. And so with that, the court will note we did have matters that took us a little bit longer so we are running a few minutes behind today. So I do apologize for that. Counsel with that, you may proceed with your argument. Thank you, honors. May it please the court. Justices Yarman, Blanard, and Bansal. The primary question on this appeal is whether the Illinois Commerce Commission's October 31, 2024 official notice is a reviewable rule, regulation, order, or decision under section 10-201 of the Public Utilities Act. It is our position that it is not. It is not the product of ICC adjudication. There was no hearing, no findings, no exercise of discretion, and no opportunity for MPOWER to be heard on those issues. The notice simply informed MPOWER that its certificates of service authority were revoked by operation of law and that it would have to apply for new certificates. I'll address several issues this morning. First is the general jurisdiction of the circuit court and section 10-201 of the Public Utilities Act. Second is whether or not the dismissal was proper as to defendants. Third, whether a leave to amend should have been allowed and whether the dismissal with prejudice was proper. And finally, the mootness arguments that were addressed on the motions. First, with regard to jurisdiction. The official notice in this case, which is at the record C-74 dated October 31, 2024, reads that the Office of the Secretary of State issued the Certificate of Revocation. Because of this, your right of your limited liability company to engage in business under the Public Utilities Act has now been revoked by operation of section 4-204 of the Public Utilities Act. If you wish to continue the business that required commission certificate or licensure, you must reinstate your limited liability company and then reapply for commission certification or licensure. Our position is that this was not any type of a hearing, ruling, or finding under section 10-201. 10-201 speaks of an order or decision or by any order or decision of the commission refusing an application or for a rehearing of any rule, regulation, order, or decision of the commission. That is not what we have here. Critically, there was no opportunity for MPOWER to be heard before this revocation of its certificate and license was applied. So why this mattered here, going back, December 2017 is when the Commerce Commission issued its Certificates of Service Authority as an alternate retail electric supplier and an alternate gas supplier. On October 31, it issued the official notice. The notice did not provide a hearing. There was no mechanism to challenge that asserted revocation. There was no opportunity to submit evidence and no show that the same day it received the notice, it had been reinstated by the Secretary of State. So why this mattered in the real world is that Commonwealth Edison then sent MPOWER a letter advising that because its certificate had been revoked, it would cancel MPOWER's customers. Likewise, Northern Illinois Gas and Peoples Gas sent similar notices indicating that MPOWER's would be canceled and those cancellations would occur on December 9, 2024. And that happened, correct? Those cancellations? Yes, it did. And is it correct that that can't be undone at this point? It cannot be undone, but there it is. And therefore, this is a moot case? Well, I could address that. It's in some ways it can be, let's call it undone, but you have to go through the process of seeking out those customers again. I think if I understand this, that MPOWER has to provide this electric case. It can't be that we give you, we can't order somebody to give you those customers. Well, it may not be, but with regard to the mootness issue, there's this issue of damages. And where in your complaint did you allege account for damages? Well, we hadn't alleged damages at that stage because we hadn't actually lost any customers. If you recall, what happened is we received the letter on October 31. We remedied that with the Secretary of State on November 6. We filed the petition for TRO on December 9. The order that was allowing that was issued on December 9. So the customers, at least as of December 9, 2024, were preserved. The status quo had been preserved at that point in time. And that was all the way through the trial court's decision, correct? Correct. Was there any action that MPOWER could have taken to stay the change in the customers while the appeal was pending? So what it had done is almost immediately, it had reapplied for these certificates. So we were following the notice, we had reapplied. That, I would just say, I think in our view, was a much longer process than it should have been. There were corrections that needed to be remade to the application process, those were submitted, it got put on hold. There were several times that we had delays. There was any action that you could have taken pending the appeal that would have stayed that change? So you mean after the dismissal with prejudice? Well, we continue to do that. We continue to do that. We continue to reapply for certification. But once those customers were lost, the only way to get them back is to, on the back side, after you have recertification, I would suppose is what you call it, reauthority, is try to go and do that. And it's been a significant amount of money to go ahead and do that. So addressing the move to dismissal... Have you asserted a claim for damages in any of your amendments or supplemental amendments? So we haven't. But, your honor, that's a critical point about this issue of dismissal with prejudice. That we actually filed the motion to amend even before, I think it was, let me see... I think the motion to amend was filed on December 19th, which was the same day that the TRO was extended. So at that point in time, we were attempting to clarify some of the issues. But ultimately, the problem with dismissing a complaint at these early stages is you're trying to figure out exactly what you got. So if this case was one where the allegations of jurisdiction needed to be refined, allegations with regard to the claim damages or remedies needed to be refined, additional counts that needed to be added to clarify the potential damages issues, that should have done a lot. What our position here is that dismissal at this early stage was inappropriate. But that circuit court should have allowed, I mean, maybe perhaps dismissal could have been allowed and saved without prejudice and with the need to replead to try to clarify these issues. But that was not done. Essentially, there was a final adjudication on the merits, essentially at the hearing date on the petition for preliminary injunction. So, jump around here on my outline. I think why this, well, let me bring this back a little bit. I'm going to talk about the Hutchinson case. It's a big part of my argument, but I'm going to take it a little bit out of order. Both sides rely upon Hutchinson a great deal. This is a Supreme Court case in which there was action by Amarin. Well, in that particular case, that appeal from the circuit court of Edgar County was that ruling there. What they did is they reversed the issue with regard to Edgar County deciding the merits of the commission action. But it didn't dismiss the case with prejudice. It remanded it back for the proceedings. So, the issues with regard to the commission action wasn't at issue, but it allowed the case to go on. Here is that we're asking for the same thing to occur. So, the case has changed somewhat. Certainly, it has from the first weeks or months of the litigation. The case is now one of potential damages rather than injunctive or declaratory relief. So, that's why in our position, the mootness document does not apply. If I can follow up on your reply, where you mentioned the Hutchinson case on page four. And then the statement you make is that factual presentation is distinguishable here where MPOWER challenges only the constitutionality of a statute that as applied to MPOWER allowed its ARES and AGS certifications to be revoked by operational law without notice or opportunity to be heard. I guess I want to clarify because it seems to me that you're making an as applied challenge, whereas initially in your briefs, you appear to be suggesting it was facial. I just want to know if that was a phrasing issue or if you were changing the basis of that challenge. Well, you know, the function here was to revoke their authority to provide power, electrical and gas in the state of Illinois without a hearing, without any evidence. But are you making a facial challenge or an as applied challenge? I think it's both. But did you argue an as applied challenge in your initial brief? Well, I believe we argued both. So, talking about Hutchings, Hutchings involved an actual ICC proceeding, an actual ICC decision. In Hutchings, there was a petition by Ameren to the commission to construct, operate and maintain a new transmission line. A primary route was proposed, an alternative route. Interested parties intervened. There was a hearing before the commission. Evidence was taken. A commission decision approved that Ameren petition. That decision was then appealed under Section 10-201. The rulings and the decisions of the commission were held. After that, there was a second proceeding, which was that issue in the appeal. And that was to file by Ameren to a separate eminent domain action in the Circuit Court of Eckerd County involving several landowners. In that later suit, the court found that that statute was facially unconstitutional by failure to require personal notice to affected landowners. The jurisdiction issue was whether the Circuit Court could then review those rulings of the commission that actually already decided. It was a direct appeal to the Supreme Court, since it was a challenge to the constitutionality of that statute. They found no jurisdiction. But why this is different is because that was an actual review of an ICC decision versus a challenge to the legal effect of a self-executing statutory mechanism. So as we look at it, whether it's facial or as applied, it certainly is, I think it is both. But again, what the Hutchings ruling actually did is it remanded the case back to the Eckerd County Circuit Court. It took out the issues of the prior ruling that had been adjudicated and it was addressing the eminent domain issues. I do want to talk a little bit about Justice Garvin's concurrence. I think that is important and relevant here. It isolates the precise problem that we have in this case. Her point is that the appellate court's special statutory jurisdiction under section 10-201 extends to review of commission action. That is a commission rule, regulation, order, decision. But the challenge to the constitutionality of the statute itself is different. This is not a commission rule. It's not a commission order. It's not a commission decision. It's an enactment of the General Assembly. The power to decide whether a statute enacted by the General Assembly is constitutional is for the court of general jurisdiction within the circuit court. This is pointed out by Justice Garvin in paragraph 27. Nothing in section 10-201 strips the circuit court of that power. So, and this is on paragraph 28, as Justice Garvin puts it, if section 10-201 were read to mean that every constitutional challenge to a statute touching upon an agency's work must be forced into a special statutory review, then section 10-201 itself would raise serious constitutional questions. So that's exactly why Justice Garvin emphasized that the constitutionality of the Public Utilities Act, in its case, is not the same thing as a review of commission rule, regulation, and order. We have that same situation here. So the challenge itself at the early stages was the constitutionality of the notice that was given in section I'll get the right number. I've got too many pages here. 4-204. So for all those reasons, I think the court had jurisdiction of the case. The dismissal itself was not proper. So the notice itself actually reinforces that. It does not advise MPOWER that it should appeal this case to the appellate court pursuant to section 10-201 saying it's done. This is a final order. The only remedy they had is to reapply. And that itself was the unconstitutional act. I do want to address the dismissal with prejudice. And I guess I'm going to go to the second part. And that is with regard to the dismissal as to all defendants. I think this jurisdictional issue as to 10-201 applies as to the Illinois Commerce Commission. It doesn't apply to Commonwealth Edison, Northern Illinois Gas, and People's Energy. That was separate issues and separate jurisdiction. Again, we talked a little bit about the movementist doctrine. But with regard to those particular entities, what we believe is actually a potential concern here is that out of the same transaction occurrence with the identity of parties and a final adjudication that any claims that MPOWER may have had or may have against those entities for damages may now be extinguished by issue preclusion. If you remember, that was essentially the same issue that happened at Hutchins. There was an earlier proceeding. There was an attempted challenge at it later at the circuit court. And they found that, no, those issues cannot be relitigated. So our concern here with regard to the movementist doctrine and the dismissal with prejudice is that we didn't have an opportunity in the circuit court to let the matter develop and determine if additional rights or remedies, additional counts could have been pledged. Specifically with regard to three defendants here that are not the commission. And so we find that this is new. There's a fact. Is collateral stop order residue adjudicata even relevant? Yeah, that is my concern here with regard to issue preclusion. Yeah, if this appeal is dismissed, I think we have an adjudication on the merits. I think there would be identity of parties. And the final question is, do you have identical issues? In a way, it's not really the identical issues. But I think that can be, really, you're at the mercy of the court's interpretation of what that means. If it arises out of the same transaction recurrence. But if it's moot, it's moot. I mean, if you've got any authority that says that collateral stop order residue adjudicata are exceptions to mootness. Well, what I'm saying is that it's not moot. Because if the case could go back and it could be amended to include the new damages claims, then... So how many claims are we supposed to consider that you might add to a complaint that's not been filed? Well, I mean, we have to guess what you might file if it went back. And are we only to consider what's already been filed, what's in this record? Well, I agree with you. That's a troubling aspect. And that's what... There is a problem when you have a motion to dismiss and that the first ruling on it is a dismissal with prejudice. That you don't give the parties and the circuit court an opportunity to refine the issues before it's sent to your honors on appeal. So... I think I covered all the issues. Your honors have any further questions? Seeing none. Thank you, counsel. You have time to rebuttal. Thank you. You may proceed with your argument. From my understanding, you've allocated two minutes. Is that correct? I'm sorry, ten minutes. Yes. Your honors, and may it please the court. I'm Assistant Attorney John Studer, on behalf of the Defendant Appellee, Illinois Commerce Commission. The judgment should be affirmed because the circuit court lacked jurisdiction. Before I get into the core jurisdictional issue that was before the circuit court, I will emphasize that there's a ground to affirm, as your honors have discussed, just the mootness doctrine. There is no forward-looking relief that is available to MPOWER at this point. There is no backward-looking relief that's available to MPOWER at this point. As we explained in our brief, they have received new certificates from the commission. There is, as I believe MPOWER conceded in the opening argument, there is no ability for the commission or for the utility defendants to return the customers that have already been switched back to MPOWER. To be clear, we're not standing in their way of recruiting those customers again, but the customers have a right to choose if they switch to an alternative provider. So if MPOWER wants to get its old customers back, it can do so, but it needs to obtain their informed consent consistent with specific requirements of both the Public Utilities Act and with the Consumer Fraud and Deceptive Business Practices Act. What about this issue of damages? Well, I apologize. There are no claims for damages presented in the original complaint or either of the proposed amended complaints. And as we explained, I believe it's pages 34 and 35 of the commission's brief, by not presenting a proposed amended complaint with damages to the circuit court, it's waived its ability to argue that the circuit court abused its discretion in denying leave to amend. That makes perfect sense because the circuit court can really only consider the claims that are proposed before it. So I think at the end of the day, there is just no relief that's available to MPOWER and that perhaps the simplest way of resolving this case is to affirm based on mootness. Returning to the other jurisdictional argument, the Illinois Constitution precludes judicial review of agency actions except as provided by law. So the default position is that a circuit court cannot review administrative actions unless there's some statutory provision that allows the circuit court to do so. MPOWER identified no such provision here. Initially, they improperly sought review of the commission's official notice and they asked the circuit court to require the commission to grant or reinstate certificates. The grant of certificates would fall within the broad definition of administrative action and there's no statutory ability for the circuit court to weigh in on that. Now, in an attempt to avoid the jurisdictional bar, MPOWER filed what it called a supplement to its proposed amended complaint on the morning of the motion to dismiss hearing. And what it tried to do there was to reduce reference to the commission's decision to make it a little bit ambiguous about who did what and to assert what's a purported facial due process claim. On that point, I would note in its opening brief, MPOWER at page 9 disclaimed everything except for a facial constitutional challenge to section 4204 of the act. But if we were to set the labels aside, I don't think what they've actually alleged here is a due process claim at all. Even in the most recent supplement, if you look at paragraphs 16 through 18, I think what's clear is they're saying the Secretary of State allegedly did not provide us with a notice of deficiency before it revoked our LLC status. And also, they alleged that the Secretary of State did not provide did not serve the decision that revoked their LLC status. So what they're really complaining about is that the Secretary of State allegedly did not follow the LLC Act. There's no need to make a constitutional claim out of that. An existing pathway exists to challenge the Secretary of State if it allegedly didn't follow the law. That pathway was to, as your honors know, to file a complaint for administrative review in the circuit court naming the Secretary of State as a defendant and having summons issued within 35 days of the service of the Secretary of State's decision. I would also just emphasize that at some points, I understood Empower's brief to suggest that the result was unfair here. But I just want to emphasize all of the opportunities that Empower had to avoid this result. It is entirely of its own making. So in 2002, Empower should have filed this annual report with the Secretary of State and paid the associated filing fees. And then in February of 23, that's when the Secretary of State revoked their LLC status. So that started a one-year cure period. So if any time before February 10th of 2024, Empower had made things right with the Secretary of State, Section 4204 of the Public Utilities Act would not have operated. Included within that one-year cure period, if Empower had sought to file its 2023 report, at that point, it would have noticed that it had filed its 2022 report and it would have also noted that the Secretary of State had revoked its LLC status. So there were so many opportunities for them to avoid this result. And including once they were aware of the... Once the Secretary of State served its decision revoking their LLC status, they could have sought review under the Administrative Review Law. And in those proceedings, sought a stay of the Secretary of State's decision and ultimately asked the Circuit Court and potentially the Appellate Court to reverse the Secretary of State's decision. So there were plenty of opportunities both before and after the revocation of their LLC status for Empower to avoid this result. And to be clear, this has not stopped them from getting new certificates. They just had to go through the new application process. And we're not standing in the way of them getting their other customers back so long as they do it in accordance with the requirements of the law. As one final point, I would say even if the... Even if there were no jurisdictional problem in the Circuit Court, as we explained in our brief, the claims that were proposed to be amended, that they failed as a matter of law, there was no true facial due process claim here because there was plenty of process available before the Secretary of State and through the Administrative Review Law. And then the APA claim, to the extent that Section 4204 conflicted with the APA, the more specific requirements of the Public Utilities Act would control. If there are no questions from the Court, then the Commission would ask that it affirm the judgment of the Circuit Court. Seeing none, thank you, Counselor. Good morning, Your Honors and Counsel, and may it please the Court. My name is Josh Orweiler, and I represent Defendant Appalee Commonwealth Edison Company, also known as ComEd. Plaintiff Empower filed this lawsuit in the wrong court. Empower attempted to challenge administrative action by the Illinois Commerce Commission in the Circuit Court. Section 10201 of the Public Utilities Act only allows for review of Illinois Commerce Commission decisions by direct petition to the Appellate Court. Therefore, the Circuit Court properly held that it lacked subject matter jurisdiction based on Section 10201 and the Illinois Supreme Court's controlling precedent in the Ameren Transmission Company v. Hutchings. In its reply brief in this Court, Empower argues for the very first time that the jurisdictional requirements of Section 10201 do not apply to the utility companies. The Court should find that Empower waived that argument by not citing any legal authority in support of it, by not making it to the Circuit Court, and by not making it in its opening brief in this Court. In any event, existing case law makes clear that that argument fails as a matter of law. Empower cannot sidestep the constitutional limitations on court review of administrative action simply by suing utilities seeking to bar them from following their tariffs. That is nothing less than a collateral attack on administrative action taken by the Illinois Commerce Commission. And the Hutchings case is on point here. In Hutchings, the plaintiff was a utility that brought eminent domain complaints against landowners. And the landowners moved to dismiss based on a constitutional argument. They argued that a provision in the Public Utilities Act was unconstitutional both facially and as applied. And the Supreme Court held that the Circuit Court lacked subject matter jurisdiction to address that constitutionality issue because the Circuit Court did not have special statutory jurisdiction. And that special statutory jurisdiction, that limitation on the subject matter jurisdiction of Circuit Courts stems directly from the Illinois Constitution, which provides that a court is empowered to review administrative action only as provided by law. And there is not a presumption of subject matter jurisdiction in a Circuit Court to review administrative action. And the Illinois Supreme Court was very clear about this. It held that a Circuit Court, quote, has no powers from any other source, unquote, to review the decisions of the Illinois Commerce Commission. And furthermore, even if, assuming just for the sake of argument, that Section 10201 does not provide for potential jurisdiction over utility companies or claims involving utilities, all that does is further confirm that the Circuit Court lacked subject matter jurisdiction in this case. And that's because MPOWER, unquittically, was challenging administrative action of the Illinois Commerce Commission in both its complaints as well as its proposed amended complaint. And so while MPOWER now argues that Section 10201 does not apply, it points to no other statute that would provide for special statutory jurisdiction in the Circuit Court. And Hutchings is very clear that in the absence of that special statutory jurisdiction, that a court, including a Circuit Court, does not have subject matter jurisdiction to review the Illinois Commerce Commission's actions. And then finally, I'd also point out that MPOWER never pled any claims against the utilities in this case. Not in its complaint, not in its proposed amended complaint, and not even in the supplement to its motion to amend, which attached an additional proposed amended complaint. There were no causes of action against the utilities. MPOWER sought simply to enjoin the utilities from following their tariffs. And MPOWER has never identified any legal basis for any claims against the utilities. And that's telling, because the fact that MPOWER brought no claims against the utilities only further confirms that what it is trying to do here is challenge administrative action of the Illinois Commerce Commission. So the Circuit Court's dismissal of this case for lack of subject matter jurisdiction was correct and should be affirmed. Unless your honors have any questions, I would rely on our brief for the remaining issues. That's what I do. I don't believe Commonwealth Edison addressed the mootness issue in your brief. Do you have a position on that? Yes, your honor. ComEd did not file a motion to dismiss and did not put an affidavit into the record like the other two utilities. And we don't believe that there is a basis in the record to find the case moot with respect to ComEd for that reason. And I thank the court for its time and consideration in this matter. Counsel? Good afternoon, your honors. Counsel, my name is Chris Skea. I'm from the Forbes and Brady firm and I represent the Peoples Gaslight and Coke Company. I'm going to speak briefly about the mootness issue. The court took the motion on mootness with the case as we've discussed today. The mootness argument still applies and is still valid. Empower's lawsuit seeks injunctive relief preventing Peoples Gas from canceling Empower's customer enrollments in the competitive supply program. That relief is no longer available. That appears to be conceded by everyone in the room today. Any ruling would be hypothetical and thus moot. After the circuit court denied injunctive relief and dismissed Empower's complaint for lack of subject matter jurisdiction and for failure to exhaust administrative remedies, Empower's customers were switched back to standard utility bundled service as required by law. And again, that appears to be uncontested today by any party in the case. Empower never sought a stay from the circuit court and never sought a stay from this court or invoked any other mechanism to preserve that status quo during this appeal. Empower's response to the motion to dismiss effectively conceded mootness, stating, quote, it is true that the damage that has been done by the ICC, Commonwealth Medicine, Peoples Gas, and NICOR cannot be undone, close quote. Then in its reply brief, Empower again concedes that its claims against Peoples Gas and NICOR are moot. At reply brief page eight, Empower states, quote, the outcomes that were anticipated when the original complaint was filed in December 2024 did in fact occur. In other words, the things that Empower said were going to happen did in fact happen and Empower took no action to stay those things from happening. And Empower concedes that there's now nothing that this court can do based on the stale injunctive claims that it asserted in its complaint and amended complaints. That is a core classic example of mootness, as I believe all three of your honors have alluded to in one way or another today. So we do believe that the mootness argument remains valid and that the case should be dismissed on the basis of mootness. I'm happy to take any questions you might have, your honors. Seeing none. Thank you, counsel. Thank you. Counsel. Good morning, your honors. Counsel. I'm Jane Moyer-Rowley on behalf of NICOR Gas Company. I'm here to make an additional point to emphasize the arguments made by the counsel before me about mootness, the relief Empower is seeking in this case has moved as to the gas utility dependence. The statutory framework for alternate gas supplier certification is very rigid. Overall, this case is a series of non-discretionary actions in response to one choice. Empower chose to fail to maintain its status to do business in Illinois. In response, the ICC had no discretion. It had to revoke Empower's AGS certificate by operation of law, section 4204 of the Public Utilities Act. In response to that, NICOR Gas had no discretion. Our customers had to receive gas supply from a certified, valid supplier under sheet 75.3 of our tariff. And our tariff functions or operates as a statute in the state of Illinois. It was March 2025 when NICOR Gas had to unenroll Empower's former customers from supply by Empower and issue a notice to those customers letting them know the same. So now over a year has passed. Empower is seeking a return to an already altered status quo. Empower is asking the court to order the utilities to put customers into supply contracts. This relief cannot be granted. NICOR Gas has no discretion to one-sidedly enroll customers who have been receiving gas from other suppliers for a year. When events have occurred which make it impossible for the reviewing court to render effectual relief, an appeal is considered moot. On those grounds, the gas utility defendants ask that this court affirm the underlying decision. Thanks. Thank you, Your Honors. I think the first thing I want to point out is I think counsel was correct. Apparently here, ICC had no discretion. It was not a 10, basically a 10-20, 10-201 ruling. It is not a ruling that needed to and had to be appealed under Section 2-10-201. So I mean, that's the heart of this issue, at least at the beginning, is the jurisdictional issue. So I think that she summed it up perfectly. The ICC had no discretion. Going back to the mootness doctrine, counsel argued that there was no forward relief, no backward relief. There is forward relief. They lost customers for a period of time and lost income. Also, by losing those customers, they had to incur costs to reacquire. Now, of course, that wasn't litigated in the prior matter because we never got to that stage. It was dismissed. Counsel, how do you address the opposing counsel's suggestion that to avoid that, you could have filed a stay, either request with the circuit court or with this court? Well, we didn't file a stay, but your honors may recall that we did file an early motion to try to address the jurisdictional matters, to try to get this as an early issue, if it was just jurisdiction, to try to address it early. So we did take that opportunity to try to resolve the issues early on in that way. I think in that one, the court just denied the motion without taking it with the case. But as it relates to the transfer of customers from the gas companies in response to their tariffs and their mandates? I don't think it must require a party to file a stay of that circuit court's dismissal. I mean, I think the appeal was the challenge to whether or not that dismissal and dismissal with prejudice was proper. I do want to address one issue about the mootness doctrine. It's about nobody's come up here and said, we're conceding that later claims would not be precluded by issue preclusion. I think that's the key here. And that's the risk. I think what this case should have happened is that, perhaps would have been dismissed without prejudice, let the court clarify the issues and then allow us to amend the complaint and try to clarify it. It went to the point that clients were cancelled. Then it would have changed. There would have been another amendment. I did want to point out there was an argument that it mentioned the two proposed amendments. But in a motion for leave to amend in the circuit court, it doesn't require that a proposed amendment be provided. I mean, there's many times that court or counsel indicates that we need to amend, would ask for leave to amend, and leave to amend is allowed. You file an amendment, whether that be an amended answer, whether it be amended complaint, whether it be amended counterclaim. And then at that point in time, you file that and then there's another hearing on whether or not there's issues that should be addressed on a motion to dismiss. We attempted two times to try to cure issues there. The amendment should have been, or at least the motion to amend should have been allowed to try to clarify. I did want to point out about this issue of prior opportunities to prevent this. There was an affidavit in the file from a COO at the time. He advised he was a registered agent. He did not receive the notices that were referenced. So that was a factual issue that should have been, at least in the circuit court, to be decided. So I think for all of these reasons, and again, especially as to Commonwealth Edison, NYCORN, People's Gas, the circuit court had jurisdiction over those claims. Those were claims with regard to equitable relief and for injunctive relief. Section 10-204 simply didn't apply to Section 10-201. So at least as to those defendants, the case should be remanded back for the proceedings. Thank you, Your Honors. Thank you. The court will take this matter under advisement. The court stands in ready place.